864 A.2d 257

**Eugene BONDS**

v.

**ROYAL PLAZA COMMUNITY ASSOCIATES, INC.**

No. 1993, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 29, 2004.

446

Susan Mays, Glen Burnie, for Appellant.

J. Peter Puglia (Andrews & Puglia Law Group, LLC on the brief), Gaithersburg, for Appellee.

Panel: DEBORAH S. EYLER, ADKINS, RAYMOND G. THIEME, JR., (Retired, Specially Assigned) JJ.

ADKINS, Judge.

Appellant Eugene Bonds challenges the Circuit Court for Prince George's County's decision to vacate its year and a half old order foreclosing rights of redemption with respect to real property sold at a tax sale in 1997. The tax sale purchaser obtained an order foreclosing the rights of redemption in the property on January 13, 2000, but in doing so, failed to send the notice required under Md.Code (1985, 2001 Repl.Vol., 2004 Cum.Supp.), section 14–836(b)(4) of the Tax–Property Article ("TP") to appellee Royal Plaza Homeowner's Association, Inc. ("HOA"). Bonds, assignee of the tax sale purchaser, presents three issues for our review:

1. Did the circuit court err in vacating the order foreclosing the right of redemption because the tax sale pur-

chaser failed to follow the notice requirements of the Tax–Property Article?

2. Did the circuit court err in dismissing Bond's Amended Complaint, which included a claim to quiet title?

3. Did the circuit court err by not including the purchase price of $100,000 as a development cost, in the amount fixed for redemption?

We shall hold that the circuit court erred as to Issue I, and therefore, do not reach Issues II and III.

## FACTS AND LEGAL PROCEEDINGS

The property in question is a 4.42534 acre parcel ("the parcel") located in the middle of the Royal Plaza subdivision in Prince George's County. On May 22, 1989, Royal Plaza Associates, LP ("the developer") recorded four subdivision plats among the land records for Prince George's County for the then-proposed Royal Plaza development. Plat One of the four recorded subdivision plats described the parcel as "PARCEL A—TO BE CONVEYED TO THE HOMEOWNERS ASSOCIATION."

The developer subsequently formed the HOA, a non-profit, non-stock Maryland corporation,[1] listing John Dowd as its resident agent.[2] One of the purposes of the HOA, as stated in its Articles of Incorporation, was "to provide for or assure maintenance, preservation and architectural control of the Lots and Common Area within the [Royal Plaza development.]" On May 3, 1991, the developer conveyed by deed two of the four common areas to the HOA. For reasons unclear from the record, the subject parcel was not conveyed to the HOA.

---

1. Royal Plaza Homeowner's Association, Inc.'s corporate charter was forfeited on October 7, 1999. Articles of Revival were subsequently filed with the State Department of Assessments and Taxation, and the HOA's name was officially amended to Royal Plaza Community Association, Inc.

2. John Dowd was also the resident agent for the developer's partnership entity.

On May 12, 1997, Willie Lenson purchased the tax certificate for the parcel at a tax sale for the sum of $4,000. At the time of foreclosure, the developer remained the record owner of the parcel. Lenson then filed a Complaint to Foreclose the Equity of Redemption in the Circuit Court for Prince George's County on September 23, 1998. Lenson attempted to serve notice on the developer by mailing, restricted delivery, a copy of the summons, complaint, and publication order to "Royal Plaza Associates Limited Partnership: Attn. John Dowd" at the street address for John Dowd on file with the Maryland State Department of Assessments and Taxation. The service was returned marked: "NOT DELIVERABLE AS ADDRESSED. UNABLE TO FORWARD."[3] Lenson failed to send written notice of the proceedings addressed specifically to the HOA.

On January 13, 2000, the circuit court foreclosed the rights of redemption, and conveyed full ownership of the parcel to Lenson. Over a year and half later, the HOA filed a motion to intervene in the foreclosure action, along with a motion to vacate the order foreclosing the right of redemption. On November 6, 2001, before the circuit court ruled on the motions, Lenson sold the parcel to Bonds for the sum of $100,000.

Following the sale, on February 15, 2002, the circuit court granted the HOA's motion to intervene, as well as Bonds' motion to intervene, as the successor-in-interest to Lenson. The court then vacated the order foreclosing the right of redemption, ruling that the HOA was entitled to receive actual notice of the complaint.

On January 3, 2003, Bonds amended the original complaint to foreclose the equity of redemption to include a claim to

---

**3.** Given the unsuccessful attempt to serve the developer, Lenson petitioned the court to proceed by publication against it. The circuit court issued the order for publication on December 16, 1998, and the developer's rights of redemption were then foreclosed by the same order challenged by the HOA. The developer, however, has not contested the validity of the order foreclosing the rights of redemption and is not a party to this action.

quiet title. Upon a motion by Bonds, the court dismissed this claim on September 10, 2003, for lack of jurisdiction. Bonds noted a timely appeal.

## DISCUSSION

The procedure governing tax sales in Maryland is set forth in sections 14–808 through 14–854 of the Tax–Property Article. This case turns on the question of whether the circuit court could vacate its judgment, entered more than a year earlier, foreclosing the rights of redemption. Two sections are of particular importance to this issue. Section 14–836, in its pertinent parts, identifies who shall be parties to such an action, and what notices must be sent to persons who are not parties:

(a) *Plaintiffs.*—The plaintiff in any action to foreclose the right of redemption shall be the holder of the certificate of sale.

(b) *Defendants; notice.*—(1) Except as otherwise provided in this subsection, the defendants in any action to foreclose the right of redemption shall be:

(i) the record title holder of the property as disclosed by a search performed in accordance with generally accepted standards of title examination of the land records of the county, of the records of the register of wills of the county, and of the records of the circuit court for the county;

(ii) if the property is subject to a ground rent, the record title holder of the fee-simple title and the owner of the leasehold title . . .;

(iii) any mortgagee of the property . . .;

(iv) the trustee under any deed of trust recorded against the property or any holder of a beneficial interest in a deed of trust who files notice of the interest . . .;

(v) the county where the property is located; and

(vi) if appropriate, the State.

(2) The plaintiff may choose not to include as a defendant any of the persons enumerated in paragraph (1) of this

subsection. However, the rights of any person not included as a defendant are not affected by the proceedings.

(3) Subject to the provisions of paragraph (4) of this subsection, it is not necessary to name as defendant any other person that has or claims to have any right, title, interest, claim, lien or equity of redemption in the property sold by the collector. Any of these persons are included as defendants by the designation "all persons that have or claim to have any interest in property. .... (giving a description of the property in substantially the same form as the description that appears on the Collector's certificate of tax sale)." Any of these persons may be designated throughout the proceeding by the above designation and the cause may proceed against them by publication under order of court as provided in this subtitle.

(4)(i) Notwithstanding the provisions of paragraph (3) of this subsection, the plaintiff shall send written notice of the proceeding to:

1. all persons having a recorded interest, claim, or lien, including a judgment, who have not been made a defendant in the proceeding, and, **if the subject property is the common areas owned by or legally dedicated to a homeowners association, to the homeowners association governing the property, at the last reasonably ascertainable address** ....

(iii) The plaintiff shall file in the action:

1. the return receipt from the notice; or

2. an affidavit that:

A. the notice provisions of this subsection have been complied with; or

B. the address of the holder of the subordinate interest is not reasonably ascertainable.

TP § 14–836 (emphasis added).

TP section 14–845(a), the second important section, addresses when a tax sale foreclosure judgment can be reopened:

A court in the State may not reopen a judgment rendered in a tax sale foreclosure proceeding **except on the ground of lack of jurisdiction** or fraud in the conduct of the proceedings to foreclose. (Emphasis added.)

■ The combined effect of these two statutes requires a homeowners association to establish three elements in order to successfully vacate an order foreclosing the right of redemption · in common area property for failure to send proper notice. First, a homeowners association must show that the common area is owned by, or "legally dedicated" to it, or that it have a recorded interest, claim or lien. *See* TP § 14–836(b)(4)(i)(1). Second, the homeowners association must establish that the tax sale plaintiff failed to send written notice to the association's last reasonably ascertainable address as required. *See id.* Finally, the homeowners association must demonstrate that the failure to send notice resulted in either the court lacking jurisdiction or fraud in the foreclosure proceedings. *See* TP § 14–845(a).

We think the HOA satisfies the first requirement in two respects. First, the designation on the plat that the parcel was "to be conveyed to the Homeowners Association" created a "recorded interest" in the HOA. Second, the parcel was "legally dedicated" to the HOA, within the meaning of section 14–836(b)(4)(i)(1). *See* discussion, *infra*, regarding how we interpret the legislature's intent in using the term "dedicated," a term that courts have held only applicable when land is given to or for the use of the public. *See City of Annapolis v. Waterman*, 357 Md. 484, 504–06, 745 A.2d 1000 (2000).

■ As to the second requirement, Lenson failed to send written notice of the complaint to foreclose the right to redeem to the HOA at its last reasonably ascertainable address. Instead, Lenson sent notice to the developer, care of John Dowd, the developer's resident agent, at the address on file with SDAT for Dowd. This notice was then returned marked "undeliverable." At no time did Lenson mail any notice addressed specifically to the HOA, as required.

Bonds suggests that because Lenson sent notice to John Dowd, the shared resident agent for both the developer and the HOA, the notice requirements of section 14–836(b)(4)(i)(1) have been satisfied. We do not agree. Sending notice addressed to the **developer,** care of John Dowd, is simply not the same as sending notice addressed to the **HOA,** care of John Dowd. Bonds cannot attempt now to transform the notice sent to the developer into something it was not—notice sent to the HOA.

■ The third prerequisite, a showing of fraud or lack of jurisdiction, proves to be an insurmountable hurdle for the HOA. The HOA has never asserted that there was actual fraud in the foreclosure proceeding. Lenson's failure to send the required notice to the HOA, however, may have been constructive fraud. The Court of Appeals has held that a tax sale purchaser's failure to provide the property owner with the statutorily required notice of his petition to foreclose the equity of redemption is constructive fraud because it constitutes a "fail[ure] to perform a legal duty." *See Jannenga v. Johnson,* 243 Md. 1, 5, 220 A.2d 89 (1966). Even though we have found no Maryland case addressing this precise circumstance, we are persuaded that a failure to perform the legal duty of notifying a homeowners association also would constitute constructive fraud.

TP section 14–845(a), however, only permits reopening the judgment on the basis of constructive fraud if the petition to reopen is filed within one year of the order foreclosing the right of redemption. Because the HOA's motion was not filed within this one year window, the judgment cannot be reopened on constructive fraud grounds.

Thus, to satisfy the third step required for reopening the foreclosure order, the HOA must establish that the court lacked jurisdiction to enter the order foreclosing the right to redeem. Because we conclude that the court did have jurisdiction to enter the order foreclosing the equity of redemption, we hold that the HOA is unable to satisfy the third step. We explain below.

"A proceeding to foreclose an equity of redemption in a tax sale is a proceeding *in rem* or *quasi in rem* and the legislature, without affronting due process, could have provided that all interested parties . . . were to be brought before the court by publication." *Master v. Master,* 223 Md. 618, 624, 166 A.2d 251 (1960). Here, there was service by publication accurately describing the location and size of the parcel. Therefore, if there were no further legislative requirements, no due process concerns would be present.

The issue of personal jurisdiction is pertinent, then, only because the legislature chose to require that certain defendants be personally served with the complaint to foreclose. As the Court of Appeals said in Master,

> The Legislature . . . chose to require . . . that [certain named defendants] must be personally served by subpoenas. . . . Since the [co-owner] . . . was not served, the court had neither the right nor the power to proceed against her interest in the property, and the order of publication was without effect as to it.

*Id.*

■ The HOA, in an attempt to establish a jurisdictional defect, argues that "when a foreclosure plaintiff fails to follow the strict notice provisions of [TP] § 14–836, the trial court is without jurisdiction to enter a valid decree of foreclosure, and such decree will not withstand attack by a party that failed to receive the required notice." The cases cited by the HOA for this proposition, however, all involved property **owners,** whom the legislature had identified as **necessary defendants** to the tax sale foreclosure proceedings.

In *Master,* for example, the property was owned as tenants by the entireties, and the tax sale petitioner failed to serve the wife, who was estranged from her husband. *See Master,* 223 Md. at 620, 166 A.2d 251. Similarly, in *Smith v. Watner,* 256 Md. 400, 406, 260 A.2d 341 (1970), the foreclosure petitioner failed to personally serve the record owners. The Court of Appeals upheld the circuit court's decision to set aside the order foreclosing the owners' right of redemption because "the

court below lacked jurisdiction to decree the foreclosure." *Id.* at 405, 260 A.2d 341.

In *Bailey v. Stouter,* 66 Md.App. 180, 187–88, 502 A.2d 1125, *cert. denied,* 306 Md. 288, 508 A.2d 488 (1986), the foreclosure plaintiff failed to personally serve the sole trustees, who were the legal owners of the subject property, as required by the TP Article. Recognizing that the owners of the property were necessary parties to the foreclosure proceedings, *see id.* at 187, 502 A.2d 1125, Judge Wilner, writing for this Court, concluded that, "by reason of [the foreclosure plaintiff's] failure to comply with [the notice requirements] as to [the record owners], the court had 'neither the right nor the power' to proceed against their interest in the property. . . . The decree of foreclosure was jurisdictionally deficient and must be vacated." *Id.* at 192, 502 A.2d 1125.

We learn from these cases that when notice is not properly sent to a necessary party defendant, the court lacks **personal** jurisdiction to proceed against that defendant's interest in the subject property. *See also Thomas v. Hardisty,* 217 Md. 523, 534–35, 143 A.2d 618 (1958)("There was no personal service on [the owner] or actual notice to him of the proceedings. . . . [T]he Circuit Court lacked jurisdiction to render a decree foreclosing the rights of [the owner] to redeem"); *James v. Zantzinger,* 202 Md. 109, 117, 96 A.2d 10 (1953)("Since we find that the Court had **jurisdiction of the parties** and the subject matter, and that the decree . . . was not obtained by fraud, we must reverse the order striking out the decree")(emphasis added); *Nichol v. Howard,* 112 Md.App. 163, 176, 684 A.2d 861 (1996)("[the foreclosure petitioner] failed to furnish notice [to the property owners]. . . . The circuit court, therefore, did not have **personal jurisdiction** over [the owners]")(emphasis added).

We interpret these cases as saying that, when the legislature requires that a property owner be personally served, and he is not, and he is otherwise without actual notice, the *in rem* jurisdiction over the property that could otherwise be achieved by publication is not sufficient to foreclose upon the interests

of those unserved owners. In other words, Maryland courts have held that their jurisdiction in tax sale proceedings is limited by the legislation requiring personal service upon party defendants.

The circuit court read *Brashears v. Collison,* 207 Md. 339, 115 A.2d 289 (1955), as supporting its decision to vacate the order foreclosing the right of redemption because it stood for the broad principle that "the rights of [persons] entitled to notice of tax foreclosure proceeding are unaffected by actions arising out of the proceedings." Like the other cases discussed above, however, *Brashears* involved property **owners** who were necessary party defendants to the foreclosure proceedings, and the opinion does not suggest that the holding should be more broadly applied to other persons having interests in the property. *See id.* at 347, 115 A.2d 289. Because proper notice was not sent to the owners, the Court of Appeals concluded that,"[a]s to them the court was . . . without jurisdiction to pass the decree of foreclosure [of the right of redemption] here attacked." *Id.* at 348. *Brashears* does not state that this rule would apply to an entity, including a homeowners association, that was **not** a necessary **defendant** in the foreclosure action.

The HOA asks us here to extend this line of cases by holding that the failure to send written notice to the HOA, an entity which is **not** a record title holder, also deprives the court of jurisdiction to foreclose the right of redemption simply because TP section 14–836(4)(i) requires that notice be sent to the HOA. Although such a holding might achieve an equitable result by allowing the HOA to redeem the parcel in this case, we cannot hold that the court lacked jurisdiction simply to reach a favored result.

Certain basic principles govern our interpretation of statute.

When we construe a statute, we ask what the legislature intended. The words of the statute are the primary source of information for that inquiry. We also refer to "external manifestations of intent or general purpose available through other evidence," including "a bill's title and func-

tion[,] paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case."

*Fagerhus v. Host Marriott Corp.*, 143 Md.App. 525, 536, 795 A.2d 221, *cert. denied*, 369 Md. 572, 801 A.2d 1032 (2002) (citations omitted). We see no indication in the language of the statute, legislative history, or other sources referenced above, that the legislature intended to further limit the court's jurisdiction when it amended subsection (4) of section 14–836(b), but left section (1) thereof intact.

TP section 14–836(b)(1) identifies who shall be the defendants in an action to foreclose the right of redemption. These defendants include the "record title holder," all mortgagees, and others, without mention of a homeowners association that is only the **intended** recipient of a deed to the common areas. *Black's Law Dictionary* 1523 (8th ed.2004) defines "record title" to mean "[a] title as it appears in the public records **after the deed is properly recorded.**" (Emphasis added.) Because the legislature did not specify any other definition of this term, we assume that its common meaning was intended.

Applying this definition, we conclude that the HOA is not a "record title holder." No deed was signed conveying title, and title did not pass just by virtue of the developer-owner's recorded statement of intent to convey the parcel to the HOA. *Cf. Ayres v. Townsend*, 324 Md. 666, 675–76, 598 A.2d 470 (1991)(interpreting section 14–836(b)(1)(i), and holding that "a [recorded] right of first refusal, while a valuable interest in property, does not, in common parlance, come within the ambit of 'record title holder' "). In *Ayres*, the Court of Appeals recognized that a right of first refusal is an equitable interest in property, and "not merely a contractual right[.]" *See id.* at 675, 598 A.2d 470. But, it declined to include a recorded equitable interest within the term "record title holder":

It is clear that [the holder's] interest in the property was delineated in the deed and, therefore, was ascertainable through a search of the land records. That, of course, does not elevate her interest to that of a "record title holder," within the contemplation of § 14–836(b)(1)(i)[.]

*Id.* Here, although the developer's commitment to convey the parcel to the HOA that appears on the recorded plat might accord the HOA an equitable interest in the property, like the interest of one who held the option to purchase in *Ayres,* the former does not carry the status of a "record title owner."

There is no doubt that when the legislature amended the language of subsection (4) of TP § 14–836(b) in 1994,[4] it intended to add a mechanism to protect homeowners associations, such as the HOA, against inadvertent loss of common area property through tax sale proceedings, even when the associations did not hold record title. The mechanism that it chose to add was a requirement that the person seeking to foreclose an equity of redemption send notice to any homeowners association that "owned" the property or to whom the property had been "legally dedicated."

Section 14–836(b)(4)(i)(1) states that the common area must be owned or "legally dedicated" to a homeowners association. The meaning of "legally dedicated" was considered by the Court of Appeals, when it held that the **public** must be a party to every dedication, and therefore, real property cannot be **dedicated** to a homeowners association. *See City of Annapolis v. Waterman,* 357 Md. 484, 504–06, 745 A.2d 1000 (2000). Thus, the legislature's use of the term "dedicated" is technically inaccurate under these circumstances.

 Yet, "[w]hen the clear purpose of a statute would be subverted by a mechanical application of a technical term, the courts will interpret that term to ensure that the legislative purpose achieves its full effect." *River Birch Assocs. v. City of Raleigh,* 326 N.C. 100, 109, 388 S.E.2d 538, 543 (1990)(cited with approval in *Waterman,* 357 Md. at 506, 745 A.2d 1000).

---

4. 1994 Md. Laws, ch. 580 § 1 (effective Oct. 1, 1994).

The legislative history pertaining to section 14–836(b)(4)(i)(1) makes clear that the legislature intended that the notice requirement apply when the homeowners interest in the property is shown on the plat, even if the homeowners association did not have title. The House Economic Matters Committee Floor Report for the 1994 House Bill 657 stated:

Current law requires notice of a tax sale to be sent to all persons having a recorded interest, claim, or lien on the property. However, this does not ensure notice to an association when, for example, **the common area is sold while still under control of the developer.** (Emphasis added.)

But, we glean from the language of the statute that the legislature did not intend that homeowners associations be made party defendants when they did **not** hold record title. It would have been a simple matter to add homeowners associations to subsection (1) of section 14–836(b), thus making them necessary parties, with the rights attendant thereto. This was not done. Instead, the legislature gave them a lesser degree of protection, by adding them as entities entitled to notice under subsection (4) of section 14–836(b).

We presume that the legislature understood that, in declining to make the homeowners associations necessary parties, it failed to guarantee them the same protection granted to necessary parties, *i.e.,* that a failure to notify them would deprive the court of jurisdiction to foreclose on their property interests. *See, e.g., Master,* 223 Md. at 624, 166 A.2d 251 (when necessary party is not served, court has no jurisdiction to foreclose interests of that party). *See also City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984) ("[T]he legislative body is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute").

█ In 1994, when subsection (b)(4) of section 14–836 was modified to require notice to interested homeowners associations, TP section 14–845 was already on the books. *See* 1987 Md. Laws, ch. 689 (added "lack of jurisdiction or fraud in the

conduct of the proceedings" language). TP section 14–845(a) prohibited a court from reopening a judgment in a tax sale foreclosure proceeding "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose[.]" It also placed a time limitation on when a judgment could be reopened for constructive fraud, requiring that any application on such ground be "filed within 1 year from the date of the judgment." TP § 14–845(a).

As we earlier indicated, the failure to give a required statutory notice has been considered constructive fraud. *See Jannenga,* 243 Md. at 5, 220 A.2d 89. If TP section 14–845 had not restricted constructive fraud claims to the one year window, then the failure to give notice to the persons and entities listed in subsection (b)(4) (such as the HOA), could entitle them to reopen an order of foreclosure for an unlimited number of years, just like the necessary parties identified in subsection (b)(1). The inclusion of the one year limitation on constructive fraud claims as a basis for reopening suggests that the legislature intended that there be a secondary category of interested persons who were entitled to more protection than the largely "fiction[al]" notice by publication,[5] but less than necessary party status.

Our interpretation of the General Assembly's intent that homeowners associations be in a secondary category whose members possess only a limited opportunity to reopen an order foreclosing the right of redemption is consistent with the legislative policy favoring foreclosure of the rights of redemption after a tax sale. TP Section 14–832 expressly directs:

---

5. As we have recognized,

 [t]o a large extent, notice by publication is a fiction. Without substantial evidence in support, it rests on the assumption that ordinary people regularly peruse the legal notice columns in the hundreds or thousands of newspapers published throughout the country looking for notices that may pertain to them. It is, of course, a necessary fiction, for it allows courts to proceed in cases where necessary parties cannot otherwise be given the constitutionally required notice.

 *Bailey v. Stouter,* 66 Md.App. 180, 185–86, 502 A.2d 1125 (1986) (citation omitted).

The provisions of §§ 14–832.1 through 14–854 of this subtitle shall be liberally construed as **remedial legislation to encourage the foreclosure of rights of redemption** by suits in the circuit courts **and for the decreeing of marketable titles to property sold by the collector.** (Emphasis added.)

As the Court of Appeals views this section, "the legislature has declared that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure." *Thomas v. Kolker*, 195 Md. 470, 475, 73 A.2d 886 (1950).

The pronounced legislative policy favoring marketable title is another reason we cannot agree with HOA's argument that, in choosing to categorize homeowners associations only as entities entitled to notice under TP section 14–836(b)(4), rather than as necessary parties under subsection (b)(6), the legislature intended to limit the court's jurisdiction as to them, thus giving them unlimited time to challenge an order foreclosing the right of redemption.

Rather, we think the legislature intended to give homeowners associations the more limited, qualified right that arises from a claim of constructive fraud. Because the HOA's motion to vacate the order foreclosing the right of redemption was filed more than a year after the order, the HOA missed its opportunity to challenge the foreclosure order.

## CONCLUSION

In sum, despite our belief that the legislature intended to protect the interests of homeowners associations by adding to TP section 14–836(b)(4)(i)(1) a specific requirement that they receive notice of foreclosure actions, it chose not to make them necessary parties. There is no precedent suggesting that a court lacks jurisdiction to enter an order foreclosing rights of redemption merely because of a failure to give notice to a nonparty, and we decline to adopt such a rule. There was no claim of actual fraud, and any claim of constructive fraud

would be filed too late. Although the result in this case seems unfortunate, we are bound by the terms of these two statutes, and common law respecting finality of judgments. The circuit court erred in vacating the January 13, 2000 order foreclosing the HOA's right of redemption. To the extent that our holding might be inconsistent with the legislature's intent in requiring written notice of foreclosure proceedings to interested homeowners associations, we invite an appropriate review by the General Assembly.

**JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT OF PRINCE GEORGE'S COUNTY TO REINSTATE THE ORDER FORECLOSING THE RIGHT OF REDEMPTION. COSTS TO BE PAID BY APPELLEE.**