81 A.3d 501

**PNC BANK, NATIONAL ASSOCIATION, et al.**

v.

**BRADDOCK PROPERTIES.**

No. 2025, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Dec. 18, 2013.

316

William H. Thrush, Jr. (Rosemary E. Allulis, Weinstock, Friedman & Friedman, PA, on the brief), Baltimore, MD, for Appellant.

William J. Holtzinger (Holtzinger Weaver, on the brief), Frederick, MD, for Appellee.

Panel: KEHOE, BERGER, RONALD B. RUBIN, (Specially Assigned), JJ.

KEHOE, J.

This is an appeal from a judgment of the Circuit Court for Frederick County foreclosing the equity of redemption in a tax sale proceeding. The appellants are PNC Bank, N.A. ("PNC") and Sidney S. Friedman, Jeffrey M. Lippman, and William H. Thrush, Jr. (the "Substitute Trustees"). PNC was the beneficiary of a deed of trust encumbering the property in question and the Substitute Trustees, acting on behalf of PNC, were plaintiffs in an action to foreclose the deed of trust. The appellee is Braddock Properties, LLC ("Braddock"), the purchaser of the property at tax sale and the plaintiff in the redemption foreclosure action.

Appellants raise six questions for our review, which we have consolidated and reworded:

I.    Did the circuit court have jurisdiction over PNC when it issued the decree foreclosing the equity of redemption on the property?

II.   Was PNC a mortgagee of the tax sale property and thus entitled to be identified as a named defendant pursuant to Md.Code (1985, 2012 Repl.Vol.) § 14–836(b) of the Tax—Property Article ("TP")?

III.  Did the circuit court err in denying the appellants' post-judgment motions?

We conclude that the circuit court had jurisdiction over PNC. PNC was not a mortgagee as that term is used in the tax sale statute. The post-judgment motions at issue are (1) appellants' motion to stay enforcement of the judgment pending appeal; (2) their motion to require Braddock to permit them to redeem the property; and (3) their motion for what in effect would have been a declaratory judgment as to their rights in the property. The circuit court did not err when it denied these motions. We will affirm the judgment of the circuit court.

## BACKGROUND

The property at issue is a 14.3 acre tract located in Frederick County. In 2006, BBR Properties, L.L.C. ("BBR Properties") borrowed $395,000 from Farmers and Merchants Bank ("F & M Bank") to purchase the property. Repayment of the loan was secured by a deed of trust on the property recorded in the land records of Frederick County. The deed of trust recited that F & M Bank was the beneficiary of the instrument.

In 2007, PNC acquired F & M Bank by merger, thereby succeeding to F & M's status as beneficiary. Subsequently, BBR Properties went into default on the loan and stopped paying taxes on the property. From this point, the record establishes the following sequence of events:

- May 10, 2010: Frederick County sold the property to appellee Braddock Properties L.L.C. ("Braddock") at a tax sale, subject to the equity of redemption.

- August 16, 2010: PNC filed in the Land Records of Frederick County a deed of appointment appointing the Substitute Trustees for the purpose of foreclosing the deed of trust.

- October 25, 2010: the Substitute Trustees filed a foreclosure action on behalf of PNC against the property.

- At some point (the exact date cannot be determined by the material in the Record Extract), PNC filed a collec-

tion action against BBR Properties and obtained a judgment. This judgment was a lien against the property.

On June 3, 2011, Braddock filed an action to foreclose the equity of redemption. The complaint named as defendants BBR Properties, Frederick County, and "all persons or entities that have or claim to have any interest in the property . . . ." but did not name either PNC or the Substitute Trustees. The complaint did, however, mention both PNC and F & M Bank, stating, in pertinent part, that:

A complete search of the Land Records of Frederick County, and the records of the Register of Wills for Frederick County, and of the Circuit Court for Frederick County . . . discloses the following: title is vested in BBR Properties LLC . . . by Deed dated June 6, 2006 . . . Deed of Trust among BBR Properties, LLC and Farmer's and Mechanic's Bank recorded in the Land Records of Frederick County . . .; * * * Judgment Lien in favor of PNC Bank (Formerly Farmer's and Mechanic's Bank) as reflected in Frederick County, Maryland Circuit Court Case Number 10–C–10–002364 CJ. . . .

The complaint made no reference to the pending foreclosure proceedings or to the Substitute Trustees. No summons was issued to PNC, although it did receive a copy of the complaint by certified mail. The Substitute Trustees were not named as defendants in the complaint, nor was a summons or a copy of the complaint served on them.

On August 30, 2011, the circuit court entered a judgment foreclosing the equity of redemption on the property and instructing the Treasurer of Frederick County to convey the property to Braddock in fee simple.

On September 6, 2011, PNC and the Substitute Trustees filed a joint motion to vacate, alter, or amend judgment, arguing that (formatting altered):

[Appellants] were deprived of their interest in the subject property without due process of law; the Court never obtained jurisdiction over the [Appellants]; defects in the Decree and Complaint are fraud in these proceedings; pur-

suant to Maryland statute, [Appellants'] rights should not be affected by these proceedings; if the decree, as entered, is allowed to stand, then the rights of the [Appellants] will be irreparably prejudiced; [Appellants] are ready, able and willing to pay the amounts due to redeem the property from tax sale.

A hearing on the motion was held on October 20, 2011. The circuit court then issued a memorandum opinion and order on November 8, 2011 denying the motion as to PNC but granting it as to the Substitute Trustees. In denying relief to PNC, the circuit court stated (citations to the record omitted):

PNC Bank ("PNC") was not specifically named in the Complaint. BBR Properties and Frederick County were identified as specific defendants; all other persons and entities were identified as "all persons or entities that have or claim to have any interest ..." On its face, this fails to comply with [Tax Property Article ("TP")] Section 14–836(b)(iii).

PNC was served with the Complaint pursuant to [TP] § 14–839(a)(4). PNC Bank is specifically listed as a party in interest ... despite not being named a defendant. An attorney representing PNC called Plaintiff regard[ing] redeeming the property in July 2011, requesting the amount of money necessary for redemption. The parties also exchanged at least one email about the right of redemption.

Proper service of process provided actual notice to PNC of the ongoing proceedings. Plaintiff provided a return receipt from the certified mail that was sent to PNC as well as an affidavit of service.... However, PNC admits that it did have actual notice of the proceedings and w[as] fully aware of its interest in the matter.

The notice's purpose is to assure that all parties with an interest in or right to property are given the opportunity to redeem the property before that right is foreclosed. In this case, although PNC was not named as a defendant as required by the Rules, it was provided with actual notice.

To place form over substance in this case would not be equitable.  Defendant PNC Bank's Motion is denied.

The circuit court vacated the judgment as to the Substitute Trustees because:

> Unlike PNC, the Substitute Trustees were neither named as defendants nor properly served with notice. . . .  The Substitute Trustees were not served the Complaint, named in the Complaint, or otherwise notified as required by the Rules.  The Court also notes that the Plaintiff was aware that a foreclosure action was docketed against this property, but chose not to notify the Substitute Trustee[s].  Because the Substitute Trustees were neither named as defendants nor properly served with actual notice, their Motion is granted.

Accordingly, the circuit court vacated "the Decree foreclosing the Trustee's Right to Redemption."

PNC and the Substitute Trustees filed a motion for reconsideration.  In substance, PNC asserted that it was a mortgagee and, as such, was entitled to be named as a defendant pursuant to TP § 14–836 and that, because PNC was not served with a summons, the circuit court had no jurisdiction over it.  The Substitute Trustees faulted the circuit court for failing to amend the judgment "to specify the rights of the [Substitute] Trustees," noting that "[Braddock] has refused to allow the [Substitute] Trustees to redeem the subject property, despite proper tender of redemption payment."  This motion was denied without discussion on December 16, 2011.

On November 21, 2011, the Substitute Trustees filed what they termed a "Motion to Compel," asserting that despite their proper tender of redemption payment and their request for an (otherwise unspecified) "Letter of Release" from Braddock's counsel, Braddock had refused to accept payment and refused to provide the letter.  The Substitute Trustees further alleged that Braddock's counsel had refused to provide the "Letter of Release" because "he did not believe that the Substitute Trustees had standing to redeem the property in light of this Court's ruling."  The Substitute Trustees stated

that "[Braddock's] refusal to provide a Valid Letter of Release, despite proper tender of payment, is in contravention of this Court's Opinion and Order, of Maryland statue [sic], and of the Substitute Trustee's rights in the property." Two days later, the Substitute Trustees filed a motion to stay enforcement of the judgment until the resolution of the above-detailed issues. Braddock opposed the motion to stay on the basis that: "PNC . . . no longer has rights to the subject property. . . . The Substitute Trustees cannot have a greater interest in the property than the beneficiary, PNC." Both of these motions were denied without discussion on January 5, 2012.

This appeal followed.

## DISCUSSION

We review *de novo* the circuit court's application of the law to the undisputed facts before it. *Schisler v. State,* 394 Md. 519, 535, 907 A.2d 175 (2006) ("[W]here an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct' under a de novo standard of review."). We will provide a brief overview of the pertinent aspects of the tax sale process in Maryland in order to place the parties' contentions in context.

### I. The Statutory Overview [1]

In Maryland, when an owner fails to pay *ad valorem* taxes levied upon real property, the taxing authority for the political subdivision within which the property is located must sell the property at auction. *See* TP § 14–808; *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 91, 603 A.2d 484 (1992). After the sale, the owner of the property,

---

1. For more detailed discussions of aspects of this process, see *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 603 A.2d 484 (1992); *Voltolina v. Property Homes, LLC,* 198 Md.App. 590, 598–99, 18 A.3d 944 (2011); *Heartwood 88, Inc. v. Montgomery County,* 156 Md.App. 333, 347–48, 846 A.2d 1096 (2004); *Slattery v. Friedman,* 99 Md.App. 106, 112–114, 636 A.2d 1 (1994); *Scott v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 680–81, 605 A.2d 942 (1992).

and any other person having an equitable interest in the property, has the right to "redeem" title to the property by reimbursing the successful bidder (the "tax sale purchaser") for the taxes and other expenses paid. TP § 14–827; *see Aggarwal,* 326 Md. at 91, 603 A.2d 484; *Voltolina,* 198 Md. App. at 598–99, 18 A.3d 944.

After a period of six months, the tax sale purchaser has the right to acquire fee simple title by filing a complaint in the circuit court to "foreclose all rights of redemption of the property. . . ." TP § 14–833. This action not only gives the record owner and any other interest holders in the property an opportunity to raise procedural or other challenges to the taxes and the tax sale, *see* TP § 14–842, but also serves as a means to give those persons one last opportunity to redeem the property. *See Stewart v. Wheatley,* 182 Md. 455, 457, 35 A.2d 104 (1943) (interpreting predecessor statute). The right to redeem is effective until the circuit court enters final judgment. TP §§ 14–827 and 833(b).

As a precondition to filing a complaint to foreclose the equity of redemption, a tax sale purchaser is required to conduct a title search on the property. Based upon the results of the title examination, the tax sale purchaser is required to identify the following parties as defendants and include them in the caption of the complaint (emphasis added):

- the "record title holder," TP § 14–836(b)(1)(i);
- the "record title holder" of any ground rents encumbering the property, TP § 14–836(b)(1)(ii);
- "**any mortgagee** [under a recorded and unreleased mortgage on] the property **or any assignee of the mortgage,**" TP § 14–836(1)(iii);
- "the **trustee under any deed of trust recorded against the property or any holder of a beneficial interest in a deed of trust who files notice of the interest,** which notice shall include identification of the deed of trust, the book and page where the deed of trust is recorded, and the address at which the holder may be served with a summons," TP § 14–836(1)(iv); and

- the county within which the property is located and, under some circumstances, the State, TP § 14–836(1)(v) and (vi).

To be consistent with the terminology employed by the Court of Appeals in *Royal Plaza Cmty. Ass'n v. Bonds*, 389 Md. 187, 199, 884 A.2d 130 (2005), we will refer to this category of potential parties as "necessary defendants".

Necessary defendants are to be served with a summons and a copy of the complaint and other papers filed in the case in the same manner as in other civil actions, TP § 14–839(a)(3), that is, by personal service or by certified mail, restricted delivery. *See* Md. Rule 2–121(a). Unless a necessary defendant is specifically identified in the complaint in the manner required by § 14–836(b)(1), that party's interest in the property is not affected by the redemption foreclosure proceeding. TP § 14–836(b)(2).

There is a universe of other possible persons who may have interests in the property, *e.g.*, judgment creditors, other lien holders etc. These parties need not be specifically identified in the complaint, nor mentioned in the caption. Instead, the complaint may refer to them generically as "all persons that have or claim to have any interest in property...." TP § 14–836(b)(3). We will refer to this class of potential parties as "other interest holders."

To the extent that other interest holders can be identified by reasonable investigation, due process considerations require that they be given actual notice. *See Dillow v. Magraw*, 102 Md.App. 343, 359 n. 9, 649 A.2d 1157 (1994) (citing *Aggarwal*, 326 Md. at 92, 603 A.2d 484). This can be done by certified mail. TP § 14–839(a)(4); *Royal Plaza*, 389 Md. at 199–200, 884 A.2d 130. Other interest holders need not be served with a summons; rather, the tax sale purchaser must mail them a copy of the order of publication issued by the circuit court. TP § 14–839(a)(4). To the extent that these persons cannot be identified, they are given constructive notice through publication. TP § 14–840. *See also Voltolina*, 198 Md.App. at 600–01, 18 A.3d 944.

The circuit court may enter final judgment after the expiration dates for answering the complaint. TP § 14–844. The distinction between "necessary defendants," as identified in § 14–836(b)(1), and other interest holders—the former entitled to be specifically identified as defendants in the complaint and to be served with summons and the latter entitled only to receive a copy of the notice of publication—is critical because, as we have noted, a judgment foreclosing the equity of redemption does not apply to a necessary defendant unless the party has been properly identified in the complaint and properly served.

Returning to the facts before us, it is clear that PNC had two distinct interests in the property that are protected in different ways by the tax sale statute.

First, PNC was a judgment creditor. A judgment creditor is an "other interest holder." All that is necessary to such a party to an action to foreclose the equity of redemption is to include the generic reference to "all persons that have or claim to have any interest in property. . . ." TP § 14–836(b)(3). Section 14–839(a)(4) provides that the plaintiff may provide notice to such parties by mailing a copy of the order of publication to them by certified mail. It is undisputed that Braddock mailed a copy of the order of publication and the complaint to PNC and that one of PNC's lawyers, asserting that she was representing "PNC Bank, N.A., a mortgage lien holder on this property," contacted Braddock's counsel regarding redeeming the property, although PNC ultimately did not do so.[2]

Second, PNC was the holder of a promissory note whose performance was secured by a deed of trust encumbering the property. PNC asserts that, as the beneficiary of a deed of

---

2. The parties disagree as to why. PNC asserts, in effect, that Braddock's lawyer stonewalled PNC by refusing to respond to PNC's requests for information. Braddock disputes this. The record sheds little light on the controversy. To the extent that PNC wished to assert that Braddock's actions were wrongful, it was PNC's responsibility to present evidence to the circuit court, which it did not do.

trust, it is a "mortgagee" of the property and therefore entitled to "necessary party" status. *See* TP § 14–836(b)(1)(iii) (requiring "any mortgagee of the property or any assignee of the mortgagee of record, named as such in any unreleased mortgage recorded in the land records of the county" to be named as a defendant). As we will later explain, PNC is wrong on this score. This does not mean that its interest as a beneficiary of a deed of trust is bereft of statutory protection. TP § 14–836(b)(1)(iv) requires that "the trustee under any deed of trust recorded against the property" be identified as a defendant. As "necessary defendants," the Substitute Trustees were entitled to be served with a summons, together with a copy of the complaint, any exhibits and other papers filed in the case. TP § 14–839(a)(3); Md. Rule 2–112(a). Because Braddock did not include the Substitute Trustees as defendants, their rights to the property were not affected by the proceedings. TP § 14–836(b)(2). We now turn to the parties' contentions.

## II. Jurisdiction

PNC argues that, as the holder of the note secured by the deed of trust, it was a mortgagee. It points out that TP § 14–836(b) requires mortgagees to be named as defendants and to be served with a summons. Because no such service occurred, PNC argues that the circuit court never acquired personal jurisdiction over it. As we will explain in Part III, PNC's premise, namely, that it is a mortgagee of the property, is incorrect. PNC's argument also conflates somewhat constitutional limitations upon the exercise of jurisdiction in *in personam* and *in rem* actions, and the conceptually distinct restrictions imposed by statute upon the authority of circuit court in tax sale proceedings. We will discuss this matter first.

"Traditionally, when a state court based its jurisdiction upon its authority over the defendant's person, personal service was considered essential for the court to bind individuals who did not submit to its jurisdiction." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 796 n. 3, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (citing *Hamilton v. Brown,* 161 U.S. 256, 275, 16 S.Ct.

585, 40 L.Ed. 691 (1896)); *Arndt v. Griggs,* 134 U.S. 316, 320, 10 S.Ct. 557, 33 L.Ed. 918 (1890); *Pennoyer v. Neff,* 95 U.S. 714, 726, 733–734, 24 L.Ed. 565 (1878).

In contrast,

> in *in rem* or *quasi in rem* proceedings in which jurisdiction was based on the court's power over property within its territory, constructive notice to nonresidents was traditionally understood to satisfy the requirements of due process. In order to settle questions of title to property within its territory, a state court was generally required to proceed by an *in rem* action since the court could not otherwise bind nonresidents. At one time constructive service was considered the only means of notifying nonresidents since it was believed that "[process] from the tribunals of one State cannot run into another State." *Pennoyer v. Neff, supra,* at 727.

*Mennonite Bd. of Missions, supra.*[3]

Maryland retains the concept that a summons is necessary in an *in personam* action to bring a party under the jurisdiction of the court. *See, e.g., Flanagan v. Dep't of Human Res. et al.,* 412 Md. 616, 623–24, 989 A.2d 1139 (2010); *Hagler v. Bennett,* 367 Md. 556, 561, 790 A.2d 6 (2002) ("It is true, of course, that, even if the other procedural rules are followed, a court may not enter a valid judgment against a person unless it has acquired personal jurisdiction over that person, which ordinarily is obtained by validly serving the defendant with process.").

---

**3.** As the Supreme Court noted in *Mennonite Bd.,* the distinction between due process notice requirements in *in personam* and *in rem* actions was ended in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), which "recognized that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " 462 U.S. at 795, 103 S.Ct. 2706.

■ The instant case was not, however, an *in personam* proceeding. A court's resolution of questions of title and ownership to real property is a paradigmatic exercise of *in rem* jurisdiction and it has long been the law of this State that redemption foreclosure actions are *in rem. See, e.g., Royal Plaza Cmty. Ass'n v. Bonds,* 389 Md. 187, 199, 884 A.2d 130 (2005) (" 'The law is established that tax foreclosure proceedings are in rem and not in personam.' " (quoting *Sanchez v. James,* 209 Md. 266, 270, 120 A.2d 836 (1956))); *Gathwright v. Baltimore,* 181 Md. 362, 367, 30 A.2d 252 (1943) ("We regard this proceeding as one strictly against the property on which taxes are due and in arrear."). As long as a court has jurisdiction over the *res* in question—a question not at issue in this case—the court's exercise of jurisdiction in an *in rem* proceeding is binding upon a party with an asserted interest in the *res* when the party has received "notice reasonably calculated to apprise" it of the pending action. *Mennonite Bd. of Missions,* 462 U.S. at 798, 103 S.Ct. 2706. This constitutional principle is reflected in TP § 14–839(a)(5) ("Notice to a defendant may be made in any other manner that results in actual notice of the pendency of the action to the defendant."). Under certain circumstances, such notice may be constructive, *see Royal Plaza,* 389 Md. at 206, 884 A.2d 130, but in this case, PNC indisputably had actual knowledge and received a copy of the complaint to boot (albeit without the summons which it claims was its due).

The Due Process provisions of the United States and Maryland constitutions are not the only limitations upon the authority of a court to bind parties to judgments entered in tax sale cases. As we have noted, TP § 14–836(b)(1) requires a plaintiff in a tax sale action to specifically name "necessary parties" (as the term is used in *Royal Plaza* ) as defendants and to serve them with a summons and a copy of the complaint. If a plaintiff fails to do so, the court is without jurisdiction over such a party, *Royal Plaza,* 389 Md. at 193–94, 884 A.2d 130, and any tax sale judgment does not affect its property interest. TP § 14–836(b)(2) ("The plaintiff may choose not to include as a defendant any [necessary party]. However, the

rights of any person not included as a defendant are not affected by the proceedings."). PNC asserts that it was a mortgagee of the property because it was the holder of the note secured by the deed of trust on the property. As a result, continues PNC, it was a necessary party and the circuit court never obtained jurisdiction over it. We now turn to this contention.[4]

### III. PNC's Asserted Status as a Mortgagee

■ Before both the circuit court and this Court, PNC has contended that it is a mortgagee of the property and thus a necessary defendant to the complaint to foreclose the equity of redemption pursuant to TP § 14–836(b)(1)(iii).[5] To an extent, the circuit court agreed, deciding, as an initial matter, that

---

**4.** There is another possible problem with PNC's jurisdictional argument. PNC's initial motion before the circuit court was its Motion to Vacate, Alter or Amend Judgment. In that motion and its supporting memorandum, PNC asserted that the circuit court had no jurisdiction over it because it should have been a named party to the action. However, in addition to this jurisdictional challenge, PNC contended that the complaint to foreclose the equity of redemption was defective and a fraud on the court because the title report attached to the complaint pursuant to TP § 14–838 and Md. Rule 14–502 was unsigned. As part of the relief requested in the motion, PNC asked the court to declare the judgment void.

By joining a contention that went to the merits of the case to its jurisdictional challenge, PNC may have waived its right to contest the circuit court's jurisdiction over it. *See McCormick v. St. Francis de Sales Church,* 219 Md. 422, 428, 149 A.2d 768 (1959) ("A person who denies that a court has jurisdiction and asks relief on that ground cannot ask anything of the court which is inconsistent with the want of such jurisdiction."); *LVI v. Academy of IRM,* 106 Md.App. 699, 707, 666 A.2d 899 (1995) ("Once a party speaks to the merits of a case, the individual has made a voluntary appearance, submitting himself to the jurisdiction of the court in all subsequent proceedings.").

**5.** Specifically, TP § 14–836(1)(b) states in pertinent part (emphasis added):

(1) Except as otherwise provided in this subsection, the defendants in any action to foreclose the right of redemption shall be:

\*    \*    \*

(iii) any **mortgagee of the property** or any assignee of the mortgagee of record, **named as such in any unreleased mortgage recorded in the land records** of the county;

Braddock's failure to name PNC as a defendant in the complaint to foreclose the equity of redemption "[o]n its face" violated TP § 14-836(b)(1)(iii).[6]

We disagree with the circuit court's application of the statute. PNC was not a mortgagee and Braddock was not required to name it as a defendant in the redemption foreclosure action.

We begin with the Court of Appeals' explanation of the two types of security instruments in *Fagnani v. Fisher*, 418 Md. 371, 382-83, 15 A.3d 282 (2011):

> One who borrows money from a lender/creditor or mortgagee is designated as a borrower/debtor or mortgagor. In order to ensure repayment, a lender or creditor may require the debtor to convey property to the creditor to be held as collateral to secure the debt. The conveyance ensures that the creditor will either be repaid the loan or retain ownership of the collateral. Where the legal relationship exists between only the debtor and the lender, it is evidenced by a mortgage document; however, where the debtor conveys the property to a third party trustee rather than the lender, it is evidenced by a deed of trust.

(Citations omitted.)

While the beneficiary of a deed of trust and a mortgagee both have security interests in property encumbered by the respective instruments, and the means for enforcement are now largely identical,[7] there remains at least one important distinction between the two types of instruments.

---

**6.** However, the circuit court excused Braddock's failure to abide by the requirements of TP § 14-836(b)(1) because PNC received a copy of the complaint by certified mail and had general knowledge of the proceedings.

**7.** *See Anderson v. Burson*, 424 Md. 232, 234 n. 1, 35 A.3d 452 (2011) (noting that, while courts sometimes use the terms "mortgage" and "deed of trust" interchangeably "when discussing the repayment of their associated notes," there are "recognized differences" between the two types of instruments.); *Simard v. White*, 383 Md. 257-90, 859 A.2d 168 (2004) (discussing the historical development of mortgages and deeds of trust in Maryland.).

A mortgage is transferred by recordation of an assignment in the land records of the county in which the mortgage was originally recorded. *See* Md.Code (1974, 2010 Repl.Vol.) § 3–106 of the Real Property Article ("RP"); *Baltimore American Ins. Co. v. Ulman,* 165 Md. 630, 642, 170 A. 202 (1934) (Until an assignment of a mortgage is recorded in the land records, "the assignee assume[s] ... the risk of the mortgage debt being conclusively presumed to be in the person or corporation holding the title of record to such mortgage deed."); *Nussear v. Hazard,* 148 Md. 345, 350–351, 129 A. 506 (1925) ("[T]he title to any promissory note or other evidence of debt secured by mortgage shall be conclusively presumed to be in the person holding the record title under such a conveyance.").

The beneficiary of a deed of trust is the entity that has the right to enforce the note whose performance is secured by the deed of trust. *See Anderson v. Burson,* 424 Md. 232, 246, 35 A.3d 452 (2011) (" 'The deed of trust cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust.' ") (quoting *Le Brun v. Prosise,* 197 Md. 466, 474–75, 79 A.2d 543 (1951)). Deed of trust notes are usually negotiable instruments and the right to enforce them is governed in Maryland by the provisions of Title 3 of the Uniform Commercial Code, codified in Maryland as Md.Code (1975, 2002 Repl. Vol.) § 3–101 *et seq.* of the Commercial Law Article ("CL"). As a general rule, the right to enforce a negotiable instrument is transferred with possession of the instrument. *See* CL § 3–301.[8]

---

8. CL § 3–301 provides:
   **Person entitled to enforce instrument.**
   "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3–309 [lost or destroyed instruments] or § 3–418(d) [instruments paid by mistake]. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

As a result, the identity of a mortgagee, as well as the identity of an assignee of a mortgage, can readily be determined by an examination of the land records. In contrast, land records typically do not disclose whether a deed of trust note has been transferred and, if so, to whom. *See Simard v. White,* 383 Md. 257, 289, 859 A.2d 168 (2004) ("Multiple bond holders, multiple creditors, the need for the identity of the ultimate beneficiaries to remain unknown, etc. are all practical in a deed of trust format and impracticable, or impossible, under a mortgage format."); *see also Anderson v. Burson,* 196 Md.App. 457, 459 n. 1, 9 A.3d 870 (2010), *aff'd,* 424 Md. 232, 252, 35 A.3d 452 (2011) (discussing the Mortgage Electronic Registration System ("MERS") as a means of avoiding recording assignments of mortgages).

The difference in the ways that beneficial interests in mortgages and deeds of trust are transferred is reflected in the notice and pleading requirements for complaints to foreclose the equity of redemption. As previously discussed, TP § 14–836(b)[9] categorizes potential defendants according to the significance of their interest in the tax sale property. The necessary defendants are afforded the most protection and must be named as defendants in the complaint and must be

---

**9.** Section 14–836(b) provides in pertinent part (emphasis in bold added):

    (b) *Defendants; notice.—*
    (1) Except as otherwise provided in this subsection, the defendants in any action to foreclose the right of redemption shall be:
        (i) **the record title holder of the property** as disclosed by a search performed in accordance with generally accepted standards of title examination of the land records of the county . . . ;
        (ii) * * * *
        (iii) **any mortgagee of the property or any assignee of the mortgagee of record,** named as such in any unreleased mortgage recorded in the land records of the county;
        (iv) **the trustee under any deed of trust recorded against the property or any holder of a beneficial interest in a deed of trust who files notice of the interest,** which notice shall include identification of the deed of trust, the book and page where the deed of

served with a summons. This class includes: the record owner (§ 14–836(b)(1)(i)); any mortgagee of an unreleased mortgage, or the assignee of record of such a mortgage (§ 14–836(b)(1)(iii)); and the trustees of an unreleased deed of trust against the property **or** any beneficiary of a deed of trust "who files notice of the interest, which notice shall include identification of the deed of trust, the book and page where the deed of trust is recorded, and the address at which the holder may be served with a summons" (§ 14–836(b)(1)(iv)). These statutory distinctions reflect the fact that a title examination of a property will disclose the property's owner, whether there are any mortgages encumbering the property, and, if so, who owns them, and whether there are any deeds of trust and, if so, the identities of the trustees appointed by those instruments. On the other hand, a title examination will not disclose the identity of the current beneficiary of a deed of trust unless the beneficiary files notice of its status in the land records.

Returning to the facts of the case before us, when BBR borrowed money from F & M Bank, it executed a deed of trust to secure repayment of the loan. PNC is the successor-in-interest to F & M Bank. The loan is unpaid so PNC certainly has an interest in the tax sale property but it is neither as a mortgagee nor as an assignee of a mortgage of record. As the beneficiary of the deed of trust, PNC would obtain "necessary party" status as to the property only if it filed the appropriate notice pursuant to subsection § 14–836(b)(1)(iv). However, it failed to take this precautionary step. Under § 14–836, PNC's interest in the tax sale property is adequately protected because the tax sale purchaser is required to join the trustees—or the substitute trustees as the case may be—of the deed of trust as necessary defendants.

In short, accepting PNC's contention that it is a mortgagee would require us to disregard settled Maryland law as to the

---

trust is recorded, and the address at which the holder may be served with a summons;

      *      *      *

differences between mortgages and deeds of trust. We see no reason to do this, particularly as doing so would make the task of plaintiffs in tax sale actions materially more difficult, a result at odds with Maryland's public policy.[10] Finally, were we to agree with PNC, we would render meaningless § 14–836(b)(1)(iv)'s provision that a deed of trust beneficiary can entitle itself to named defendant status by filing an appropriate notice in the land records. This we also decline to do. *See, e.g., Ray v. State,* 410 Md. 384, 404, 978 A.2d 736 (2009) (courts "read[ ] the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.") (internal quotation marks and citation omitted).

## IV. The Post Judgment Motions

Appellants argue that the circuit court erred in denying several motions they filed after the circuit court's entry of its order vacating its judgment as to the Substitute Trustees. None of these contentions has any merit and only one deserves anything other than the most cursory of discussions.

■ First, we see no error in the court's denial of the motion to stay enforcement of the judgment pending appeal because such a stay is normally granted upon the filing of a supersedeas bond or similar security. *See* Md. Rule 8–422(a). Appellants' motion to stay enforcement was not accompanied by a supersedeas bond and stated that "a bond should not be necessary" because the "Substitute Trustees tendered attorneys fees and costs to Plaintiff's attorney in order to redeem the property, however, he has refused to provide a Letter of Release" and "because there was no monetary judgment en-

---

10. As the Court recognized in *Royal Plaza,*

"Maryland has a significant interest in encouraging participation in its tax sale program and in decreeing marketable title. Further, Maryland's tax sale mechanism is an effective means of collecting property taxes for the state, and is critical to the state's need to provide a source of revenue for a host of governmental services provided to its citizens."

389 Md. at 204–05, 884 A.2d 130 (quoting *Sallie v. Tax Sale Investors, Inc.,* 998 F.Supp. 612, 618 (D.Md.1998)).

tered in this matter." These assertions ignore Rule 8–422(b)(2), which states that, in order to stay enforcement of a judgment deciding title to, or possession of, property, including real property, "the bond shall be the sum that will secure the amount recovered for the use and detention of the property, interest, costs and damages for delay."

■ Second, appellants assert that the circuit court erred in denying the Substitute Trustees' so-called "motion to compel" Braddock to accept their proffer of the amount necessary to redeem the property. The motion recites that, after the court's order vacating the judgment as to the Substitute Trustees was filed, they proffered what—but for the fact the court had entered a judgment foreclosing BBR's right to redeem the property—would have been the amount necessary to redeem the property to Braddock's lawyer, who refused to accept it. The Substitute Trustees asserted that, because the court had vacated its judgment as to them, they "still have an interest and associated rights in the subject property, and, as such, the right to . . . redeem the property from tax sale. . . ."

This argument is a bit puzzling. The court's judgment (i) foreclosed the equity of redemption and (ii) vested in Braddock "absolute and indefeasible title in fee simple in the property," *see* § 14–844(b), except for the interests of the Substitute Trustees. In other words, Braddock's failure to properly plead and serve the Substitute Trustees did not render the foreclosure proceeding a nullity; rather, Braddock took title subject to the Substitute Trustees' interests. Because there was no longer any equity to redeem, payment of taxes and expenses would not would not have restored title to BBR Properties. The circuit court did not err in denying the motion.

This leaves us with the Substitute Trustees' contention that the circuit court erred by failing to "specify[ ] the rights of the Trustees" in the property, either by separate order or by granting the motion discussed in the preceding paragraph. We see no error on the court's part. It was under no obligation to respond in detail to the fusillade of appellants'

post-judgment motions. Nonetheless, we will address one issue because it is likely to rise again.

In its brief, Braddock contends that the circuit court denied the "motion to compel" because it accepted Braddock's contention that the Substitute Trustees had no right to redeem because their interest in the property derived solely from PNC and PNC had forfeited its right to redeem by failing to do so in a timely manner even though it had actual knowledge of the foreclosure action. Braddock asserts that the court was correct. We are extremely doubtful that this line of reasoning was the basis of the circuit court's ruling. In any event, application of the law to the facts of this case does not lead to Braddock's desired result.

As we have previously explained, TP § 14–836(b)(1)(iv) provides that, in order to foreclose the equity of redemption of a beneficiary under a deed of trust, a plaintiff in an equity redemption action must join either the trustees of the deed of trust or the beneficiary of the deed of trust if the beneficiary files the notice required by subsection (b)(1)(iv). No such notice was filed, so it was clearly incumbent upon Braddock to name the Substitute Trustees and serve them with summons. Braddock failed to do so.

Section 14–836(b)(2) sets out the consequences of the failure to join one or more of the subsection (b)(1) "necessary defendants":

> The plaintiff may choose not to include as a defendant any of the persons enumerated in paragraph (1) of this subsection. However, the rights of any person not included as a defendant are not affected by the proceedings.

In *Smith v. Lawler*, 93 Md.App. 540, 552, 613 A.2d 459 (1992), we construed § 14–836(b)(2) in a factual context similar—in most but not all respects—to the case before us. In *Lawler*, the title examination of the property in question failed to disclose that it was subject to a deed of trust. As a result, the complaint to foreclose the equity of redemption failed to designate either the trustees or the beneficiary of the deed of trust as a defendant. *Id.* at 543, 613 A.2d 459. In holding

that the judgment foreclosing the equity of redemption did not affect the rights of the beneficiary under the deed of trust, we stated:

> Appellants in the case *sub judice* were persons entitled to be named as defendants under the provisions of section 14–836(b)(1). When the appellees in the instant case failed to name appellants as defendants in the tax sale redemption case, they ultimately took the Property subject to the rights of appellants. Appellants retained the rights they had under the instrument of indebtedness. These rights are not limited to the right to intervene in the tax foreclosure cases but include all rights of holders of the instrument of indebtedness.

*Id.* at 551–52, 613 A.2d 459.[11]

What distinguishes the case before us from *Lawler* is that PNC had actual notice of the redemption foreclosure proceeding while the necessary defendant in *Lawler* did not. 93 Md.App. at 551, 613 A.2d 459. Braddock argues, in effect, that the deficiency in the complaint was cured because PNC, in its status as a judgment creditor, received actual notice of the redemption foreclosure action and made an attempt to redeem the property. It is true that, in this case, the party secured by the deed of trust note also happened to be a judgment creditor but we are not persuaded that this coincidental happenstance should relieve Braddock of its obligation to frame its complaint, identify the necessary parties, and serve them as required by law.

This Court considered a very close variation on the facts presented in the present case in *Bailey v. Stouter,* 66 Md.App. 180, 192, 502 A.2d 1125 (1986). In *Bailey,* the property sold at

---

**11.** The Court of Appeals reached a similar result in *Brashears v. Collison,* 207 Md. 339, 347, 115 A.2d 289 (1955), holding that, where necessary defendants were not named in the proceeding, the "decree of foreclosure as to them was null and void." It is significant that the tax sale statute in effect at the time *Brashears* was decided did not contain a provision substantively equivalent to the current TP § 14–836(b)(2). *See* 207 Md. at 346–47, 115 A.2d 289 (setting out Md.Code Art. 81 § 101 verbatim).

tax sale was owned by a trust. The beneficiaries of a trust were given constructive notice of the redemption action and at least one of the beneficiaries had actual notice. Although the trustees, who had legal title to the property, were properly identified in the complaint, they were never served. *Id.* at 184, 502 A.2d 1125. After engaging in an analysis similar to that in *Smith v. Lawler*, this Court concluded that the foreclosure proceeding did not affect the trustees' interest in the property "by reason of appellee's failure to comply with [the applicable statute] as to [the trustees], the court had neither the right nor the power to proceed against their interest in the property." *Id.* at 192, 502 A.2d 1125 (internal quotation marks removed).

We believe that much the same analysis is applicable here—that PNC, the beneficiary of the deed of trust, had actual notice, does not obviate the failure to plead and serve the Substitute Trustees. To hold otherwise, in our view, would not be consistent with the plain meaning of § 14–836(b)(2), which states:

> The plaintiff may choose not to include as a defendant any of the persons enumerated in paragraph (1) of this subsection. However, the rights of any person not included as a defendant are not affected by the proceedings.

When a statute is clear and unambiguous, "ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads." *Stanley v. State*, 390 Md. 175, 185, 887 A.2d 1078 (2005) (citations omitted). There is nothing in the statute that suggests that a beneficiary's actual notice trumps the clear mandates of § 14–836(b)(1) and (2), and our analysis in *Bailey v. Stouter*, albeit based on a prior version of the current statute, is to the contrary. Moreover, were we to adopt Braddock's position, we would, in effect, write out of the statute the explicit distinction between "necessary defendants," as defined in § 14–836(b)(1), and persons having or claiming an interest in the property. This we will not do. *See Fisher v. Eastern Corr. Inst.*, 425 Md. 699, 709–10, 43 A.3d 338 (2012) (stating that "various statutory provisions covering the same subject matter are to be construed, if at all possible, so

that together the sections harmonize with one another and no section is rendered nonsensical or nugatory.").

We conclude in the present case, as we did in *Smith v. Lawler,* that § 14–836(b)(2) means exactly what it says and that Braddock's title to the property is subject to the deed of trust.

**THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY IS AFFIRMED. APPELLANTS TO PAY COSTS.**